# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

**DAVID L. DICKINSON**

    Petitioner,

v.

**UNITED STATES OF AMERICA,**

    Respondent.

**CIVIL ACTION NO. 05-0184-CG-D**

**CRIMINAL ACTION NO. 02-00078**

## REPORT AND RECOMMENDATION [1]

This cause comes before the court on the following: petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. §2255 (Doc. 58) [2], the United States' response thereto (Doc. 70); petitioner's motion to proceed *in forma pauperis* (Doc. 64); petitioner's notice of renunciation of United States Citizenship (Doc. 67) and petitioner's second motion to proceed *in forma pauperis*.

---

[1] On July 5, 2005 Chief District Judge Callie V.S. Granade referred this matter to the undersigned Magistrate Judge for entry of a Report and Recommendation. The undersigned has reviewed the petitioner's motion and related documents, the transcripts of the guilty plea hearing and the sentencing hearing, the presentence report, and all other relevant documents in the court's file and has fully familiarized itself with the proceedings before Judge Granade. Based on that review, the undersigned makes the following report and recommendation.

[2] Petitioner is currently serving a sentence in state custody. However, "28 U.S.C. § 2255 is available to a prisoner in state custody attacking a federal sentence scheduled to be served in the future." See Simmons v. U.S., 437 F.2d 156, 159 (5th Cir. 1971)

(Doc. 66). [3] This action has been referred to the undersigned Magistrate Judge for entry of a report and recommendation as to the appropriate disposition of the issues in the petition.

I.   Background [4]

Petitioner David L. Dickinson was indicted on April 25, 2002 in the Southern District of Alabama on charges of carjacking in violation of 18 U.S.C. § 2119 and possession of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). (Doc. 1) On June 27, 2002 a superceding three (3) count indictment was handed down charging Dickinson with carjacking in violation of 18 U.S.C. § 219; possession and use of a sawed off shotgun during the commission of a carjacking in violation of 18 U.S.C. § 924, and possessing an unregistered firearm in violation of 26 U.S.C. § 5861(d). (Doc. 32) [5]

---

[3] Petitioner has filed three duplicative motions to proceed *in forma pauperis*. (Docs. 60, 64, 66) On March 24, 2005, Judge Granade issued an order mooting petitioner's first motion to proceed *in forma pauperis* (Doc. 60) noting "[t]here is no filing fee requirement for a §2255 motion." (See Doc. 61) The remaining two motions to proceed *in forma pauperis* have been referred to the undersigned. In light of Judge Granade's order of March 24, 2005, the undersigned finds that petitioner's duplicative motions to proceed *in forma pauperis* (Docs. 64, 66) are **MOOT.**

[4] The facts, as obtained from the factual resume attached to petitioner's plea agreement (Doc. 44) are, in sum, as follows:

> On the evening of March 8, 2002 Dickinson carjacked an individual by pointing a short barreled rifle at the victim and ordering him out of the vehicle. Several weeks later, on April 4, 2002, Dickinson was arrested by the Loxely Police Department for possession of the vehicle and the rifle. While he was being booked in the Loxely jail, Dickinson managed to take the officer's gun which he pointed at the officer's head and demanded the handcuff keys. Dickinson then turned the gun on another officer, threatening to kill her. Dickinson stole a police car and escaped but was subsequently apprehended. (Id.)

[5] The government moved to dismiss Count 3 of the superceding indictment at the close of Dickinson's sentencing hearing. (Transcript Vol. 4, pp. 17-18 )

On July 26, 2002 Dickinson pled guilty to Counts 1 and 2 of the superceding indictment. (Transcript, Vol. 1 pp. 1-12)  The Court directed that a pre-sentence investigation be conducted and set the sentencing hearing for October 29, 2002.  (Transcript, Vol. 1, p. 11 ) The Court verified petitioner's understanding of the plea agreement, specifically noting that under the agreement petitioner waived some of his rights to appeal the sentence, reserving only the right to appeal if the sentence imposed was in excess of the statutory minimum, if petitioner received an upward departure from the guideline range or if petitioner asserted a claim of ineffective assistance of counsel.  (Transcript, Vol. 1, p. 8)

During the October 29, 2002 sentencing hearing, the Court advised petitioner that he had been incorrectly advised that the minimum mandatory sentence on Count 2 was seven (7) years when, in fact, it was ten (10) years because petitioner had possessed a sawed-off weapon during the commission of the crime.  (Transcript Vol. 3, p. 3) The Court inquired whether petitioner wished to withdraw his plea as to Count 2, however, petitioner stated that he did not wish to withdraw his plea. (Id. at pp. 3-4) In response to the court's inquiry, Lyn Hillman, counsel for petitioner stated, in pertinent part:

> ... [W]e've talked to the government about this and I think we've worked out a solution to it where Mr. Dickinson will agree to go forward today, understanding that the gun count will carry a 10- year penalty, *in exchange for the government's recommendation that the sentence run concurrently with the one that's to be imposed in Baldwin County.*

(Transcript, Vol. 3, p. 3) (emphasis added)

The Court then requested and heard arguments from counsel regarding the court's authority to sentence Dickinson concurrently with the yet to be imposed state sentence.  (Transcript, Vol. 3, p. 8 )

3

While the court expressed doubt that it had the authority to sentence petitioner in the manner suggested by counsel, the court delayed the sentencing to give counsel an opportunity to brief the issue further. (Id.)

The sentencing hearing was resumed on November 13, 2002 at which time the following exchange occurred:

THE COURT: Ms. Campbell, I have received your brief on the question of concurrent sentencing and read that and I've received Mr. Lankford's brief and read that, and my preliminary question is that you represented in your brief that the reason you were not withdrawing your guilty plea was because the United States was recommending a concurrent sentence. *Mr. Lankford's brief takes the position that the Court does not have the authority.*

MS. CAMPBELL: ...[B]oth here and in open court and yesterday before an unrelated pretrial conference, it was that the *government didn't really have an objection to a concurrent sentence.*

...

MR. LANKFORD: Your Honor, I would not have an objection. The problem is I don't see any authority for the Court to do it. ... *So again, while I don't have an objection to it, I don't – I haven't seen any authority for a concurrent sentence.* ...

MS. CAMPBELL: Your Honor, it's our position- - and the reason I brought up the government's position regarding a concurrent sentence is *that Mr. Dickinson's maintaining his plea of guilty to count two with the recommendation from the government that it run concurrent, that's in effect a modification of the plea agreement. The way the plea agreements are worded, if he's not sentenced in accordance with that recommendation, he's released from his appeal waiver.*

...

(Transcript, Vol. 4, pp. 2-5 )

After hearing additional argument from counsel, the court concluded that it did not have

4

the authority to sentence the petitioner concurrently.

THE COURT: ...This Court does not think the <u>Ballard</u> case stands for the proposition that the Court has the authority to sentence concurrently in this case. It does stand for the proposition that the Court has, under some circumstances, authority to sentence consecutively to an unimposed sentence in the state. But I don't find the authority in that case to impose a concurrent sentence with a yet-unimposed state sentence. Therefore, this Court is not going to make any finding on how that sentence should be imposed and the statutory authority will guide that.

...

MS. CAMPBELL: We would ask the Court to make a finding regarding whether the failure to sentence concurrently releases us from the appellate waiver in the plea agreement.

THE COURT: I am not making any such finding on that because I think that issue is solely for the Court of Appeals.

...

THE COURT: No. I say I don't have the authority to run a sentence concurrent. But what I think you're requesting the Court to do is recommend that a sentence run concurrent, while the Court doesn't have the authority to order it. And so I am going to deny it on that ground.

MR. LANKFORD: ...I will just say for the record that I am willing and will recommend to the Baldwin County District Attorney's office that they consider running the sentences he gets over there concurrent with this. But, of course, that's in their discretion. But I will recommend that.

(Transcript, Vol. 4, pp. 6, 15-16)

      The transcript of the hearing reflects that counsel for petitioner and counsel for the government were operating under different interpretations of the government's position regarding running petitioner's federal sentence concurrently with his yet to be imposed state sentence. (Transcript, Vol. 4

pp. 2-3)  After hearing detailed argument from counsel on this issue, the court concluded it was without the authority to impose such a sentence and sentenced petitioner according to the recommendations made by the AUSA.  (Id. at pp. 5-6)  Specifically, petitioner was sentenced to a term of forty-six (46) months imprisonment on Count I and one hundred twenty (120) months imprisonment on Count 2, with the sentences to be served consecutively.  (Id. at p. 10)  Petitioner was further sentenced to a term of five (5) years supervised release upon his release from prison and was ordered to make restitution in the amount of $14,978.97 to State Farm Insurance Company.  (Id.)

On December 4, 2002 petitioner filed an appeal of his sentence to the Eleventh Circuit Court of Appeals arguing, in sum, that the district court erred in failing to order that the sentence run concurrently with the yet to be imposed state sentence.  (Doc. 52)  The government filed a motion to dismiss petitioner's appeal which was granted by the Eleventh Circuit of Appeals on  October 22, 2003.  (Doc. 57)  The Court opined, in pertinent part:

> Because there is no evidence that the written plea agreement was amended, which according to its explicit terms could only be done in writing, the appeal waiver is valid. The only exceptions to the appeal waiver were for a sentence beyond the statutory maximum, an upward departure, or a claim of ineffective assistance of counsel. Dickinson's argument on appeal, regarding a concurrent sentence, does not fall within one of those exceptions.

(Id.)  Petitioner then filed an application for rehearing, which was denied by the Court of Appeals on December 23, 2003.  (Doc. 71) [6]

---

[6] Petitioner's direct appeal became final ninety (90) days thereafter, on March 24, 2004.  See U.S.Sup.Ct. Rule 13 ("[A] petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort or a United States court of appeals... is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment."); Clay v. United States, 537 U.S. 522, 532, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003) (where defendant fails to file a petition for writ of certiorari on direct review, the one-year limitation period under §2255 begins to run when

On March 23, 2005 petitioner filed the instant motion seeking an order from the court vacating, or setting aside the conviction and sentence pursuant to 28 U.S.C. § 2255 on the grounds, in sum, that his counsel was ineffective for failing to file a written modification to the plea agreement. (Doc. 58) On June 8, 2005 the United States filed its response to the motion stating, in sum, that there was, in fact, no modification to the plea agreement and therefore, petitioner's counsel could not be deemed ineffective. (Doc. 70)

II.     Habeas Standard

Habeas relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." United States v. Frady, 456 U.S. 152, 165 (1982). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Id. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. Addonizio v. United States, 442 U.S. 178, 185 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. ... A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." Moore v. United States, 598 F.2d 439, 441 (5th Cir. 1979). [7]

In general, claims not raised on direct appeal may not be considered on collateral attack. A petitioner can, however, overcome his procedural default of claims not raised on direct appeal. The

---

the time for seeking such review expires).

[7] In Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

burden a petitioner must meet differs, depending upon the type of claim he raises. First, "non constitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in the miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." Burke v. United States, 152 F.3d 1329, 1331 (11th Cir. 1998), cert. denied, 526 U.S.1145, 119 S.Ct. 2019, 143 L.Ed. 2d 1031 (1999)(citations and internal quotations omitted). A petitioner's burden with regard to constitutional claims not presented on direct appeal is slightly less stringent. Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors." Cross v. United States, 893 F.2d 1287, 1289 (11th Cir. 1990). Jurisdictional issues, however, are not subject to procedural default because federal courts are of limited jurisdiction and the parties cannot by waiver or default confer a jurisdictional foundation that is otherwise lacking. Harris v. United States, 149 F.3d 1304, 1307 (11th Cir. 1998).

III.  Analysis

In the present action, petitioner alleges that his counsel was ineffective for "failing to record an amendment to a plea agreement in writing, causing [petitioner's] appeal to be dismissed." (Doc. 58) In order to establish ineffective assistance of counsel, a petitioner "must show that his attorney's performance was deficient and that the deficiency was prejudicial." Id. However, "[c]onclusory allegations of ineffective assistance are insufficient" Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992) (quoting United States v. Lawson, 947 F.2d 849, 853 (7th Cir. 1991)).

An attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied

8

on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984).

> When reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate. ... Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioners' to bear, is and is supposed to be a heavy one. And, we are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial ... worked adequately. Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.

Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994) (internal quotations and citations omitted); see also Chandler v. United States, 218 F. 3d 1305, 1313 (11th Cir. 2000) quoting Strickland, 104 S.Ct. at 2067 ("We recognize that '[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another.'"); Bolender v. Singletary, 16 F.3d 1547, 1557 (11th Cir. 1994) ("It is important to note that judicial scrutiny of an attorney's performance is appropriately highly deferential because the craft of trying cases is far from an exact science; in fact, it is replete with uncertainties and obligatory judgment calls.") The same standard applies whether the court is examining the performance of counsel at the trial or appellate level. See Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir.1987).

To prevail on a claim of ineffective assistance of counsel, petitioner bears the burden of establishing by a preponderance of the evidence that his attorney's performance was deficient and that he was prejudiced by the inadequate performance. Strickland 466 U.S. at 668. The elements to be considered under the Strickland analysis are as follows:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S.Ct. at 2064. Thus, a successful habeas petitioner must demonstrate that his attorney's performance fell below "an objective standard of reasonableness," Strickland, 466 U.S. at 688, 104 S.Ct. at 2064, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. at 2068. The Eleventh Circuit has opined as follows:

> [The test] has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial.... We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

Grayson v. Thompson, 257 F.3d 1194 (11th Cir. 2001)(citing White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992)).

The Supreme Court of the United States has held that the two pronged Strickland v. Washington test applies to challenges to guilty pleas based on claims of ineffective assistance of counsel. See Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed. 2d 203 (1985) Accordingly, in order to succeed on an ineffective assistance of counsel claim in the context of a guilty plea, a petitioner must establish the following: (1) that his counsel's challenged acts or omissions made counsel's overall performance fall below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's errors, petitioner would not have pleaded guilty and would have insisted on proceeding to trial. 474 U.S. at 58-59, 106 S.Ct. at 370-71. With this framework in

10

place, the undersigned now turns to petitioner's specific allegations.

<u>Failure to File Written Modification to Plea Agreement</u>

Petitioner claims that his counsel was ineffective for "failing to record an amendment to a plea agreement in writing, causing [his] appeal to be dismissed." (Doc. 58 at 2)  Specifically, petitioner argues that his counsel advised him he could appeal the court's sentence because the government recommended a concurrent sentence, but that his counsel failed to put this in writing, causing the Court of Appeals to dismiss his appeal.  (<u>Id.</u>)  Petitioner contends that he would have prevailed on his appeal as the same issue has been decided in a defendant's favor in <u>United States v. McDaniel</u>, 338 F. 3d 1287 (11th Cir. 2003) [8]

In response, the government maintains that "[b]efore petitioner can argue that his counsel was ineffective for failing to record a written modification to the plea agreement, he must establish that there was such an agreement." (Doc. 70 at 5)   This, argues the government, petitioner is unable to do because there was never an agreement to modify the plea agreement.  (<u>Id.</u> at 6) The government maintains that, at best, petitioner's counsel may have "mistakenly believed that such an agreement had been reached."  (<u>Id.</u>)

Prior to addressing petitioner's ineffective assistance of counsel claim, the court must first determine whether there was, in fact, an oral modification to the plea agreement. Petitioner's claim is

---

[8] In <u>McDaniel</u>, as a matter of first impression, the Eleventh Circuit Court of Appeals held that "a district court does have the authority to make a federal sentence concurrent to a state sentence not yet imposed for pending state charges." 338 F. 3d at 1288.  <u>See also</u> <u>United States v. Andrews</u>, 330 F. 3d 1305, 1306-07 (11th Cir. 2003) ( "[A] circuit split exists [on the issue of whether a sentencing court has the authority to impose a consecutive sentence to an unimposed, future sentence] [however] this Court has already determined on which side of the debate the Eleventh Circuit falls.").

11

premised on the idea that he agreed to maintain his plea of guilty to the gun charge (after being informed that the maximum was ten years, not the seven years he had originally been advised) in exchange for the government's recommendation to the court that the sentence be run concurrently with a yet to be imposed state sentence. (Doc. 58) [9] Petitioner states that his counsel advised him if the court did not follow the government's recommendation, he could, notwithstanding the waiver in the plea agreement, appeal the sentence. (Id.) In support of his petition, Dickinson has submitted an affidavit of his trial/appellate counsel Lyn K. Hillman, which states, in pertinent part:

> At the time of Dickinson's sentencing, the Court and the probation officer alerted the parties that Dickinson had been incorrectly advised as to the penalty regarding Count Two of the indictment at his plea hearing. The Court gave Dickinson the option of withdrawing his plea to Count Two, or proceeding with the understanding that he would face the increased penalty. I approached counsel for the government, AUSA Alex F. Lankford, IV and offered to maintain the plea of guilty of Count Two in exchange for a recommendation that Dickinson's sentence run concurrently to a pending state proceeding. Lankford agreed. On the record during the sentencing proceeding, I memorialized the modification of the plea agreement, and AUSA Alex Lankford did not object to or correct anything that I said ...Based upon Lankford's statement at the sentencing hearing, I believed the parties had agreed to modify the plea agreement.

(Doc. 59, Affidavit of Lyn K. Hillman)

In response, the government argues that no modification to the plea agreement existed, and thus, defense counsel could not have been ineffective in her representation of petitioner. In support of its position the government submits the affidavit of AUSA Alex F. Langford IV, which states, in pertinent part:

---

[9] Petitioner's argument is based on his supposition that the government would have agreed to execute a written modification to the plea agreement stating that the government would recommend a concurrent sentence. The record does not support this hypothesis. To the contrary, the record reflects that the government would have rejected such a modification.

      1)       I did not agree to recommend that Dickenson's sentence run concurrently to his pending state case.
      2)       I did not agree to modify the plea agreement
      3)       I did state, however, that if the Court decided that it was appropriate to impose a concurrent sentence, I had no objection.
      4)       After conducting legal research, I believed that the Court did not have the authority to impose a concurrent sentence and I advised both the Court and Lyn Hillman of this fact.

(Doc. 70, Exhibit E)

The Eleventh Circuit has recognized that plea agreements "are like contracts and should be interpreted in accord with what the parties intended." U.S. v. Rubbo 396 F.3d 1330, 1334 (11th Cir. 2005) citing U.S. v. Howle, 166 F.3d 1166, 1168 (11th Cir. 1999) ("A plea agreement is, in essence, a contract between the Government and a criminal defendant."); Allen v. Thomas, 161 F.3d 667, 671 (11th Cir.1998) ("[W]e have said that the construction of plea agreements is governed generally by the principles of contract law, as we have adapted it for purposes of criminal law ...."). One of the basic tenets of contract law is that there must be a meeting of the minds as to all essential terms in order for a valid contract to be created. See 2 Murray on Contracts § 48 (Lexis 2001). Moreover, a petitioner bears a heavy burden in asserting that an oral promise by the prosecutor exists outside of the written plea agreement and record. See United States v. Hauring, 790 F.2d 1570, 1571 (11th Cir. 1986).

In the present case, the record reflects that there was no meeting of the minds between defense counsel and counsel for the government. Moreover, this discrepancy in counsels' understanding was noted by the court *prior* to sentencing. (Transcript, Vol. 4 pp. 2-3) During the October 29, 2003 sentencing hearing counsel for petitioner alternately advised the court that the government agreed to

"recommend" that petitioner's federal sentence run concurrently with his yet to be imposed state sentence and that the government had "no objection" if the court chose to run the sentences concurrently. (Transcript Vol. 4, pp. 2-5)  While counsel for petitioner used these terms interchangeably they are distinct in nature, one clearly requiring an affirmative position by the government.[10]  The transcript of the hearing reflects that the government remained steadfast in its position that while it did not have an objection to running the sentences concurrently, it did not believe the court was empowered with such authority. (Id.)

    The court does not disbelieve either counsel with respect to what they say their understanding was as to the government's position on sentencing.  However, by the same token, it is obvious to the court from its careful review of the record that there was no agreement between counsel regarding the government recommending that petitioner's federal sentence be run concurrently with his yet to be imposed state sentence.  While the transcripts of the proceedings reflect that, at least initially, petitioner's counsel believed that an agreement had been reached, the subsequent hearing in which Judge Granade questioned counsel extensively on the issue should have dispelled that belief. (Transcript Vol. 4, pp. 2-3)  Moreover, prior to sentencing, counsel for the government stated, unequivocally, that the government had no objection if the court chose to run the sentence concurrently but that it was the government's position that the court did not have that authority.  (Transcript, Vol. 4, p. 3)  Thus, there was no meeting of the minds between counsel and therefore, no oral modification to the plea

---

[10] Counsel for petitioner argued that if the court's refused to run the sentences concurrently (as it was her belief the government promised) petitioner would be released from the terms of the waiver in his plea agreement and could file an appeal of his conviction and sentence. (Transcript, Vol. 4, pp. 4-5)

agreement. Petitioner has failed to show how his counsel was ineffective and how he suffered any prejudice as a result of counsel's failure to document a modification to a plea agreement that never existed. See Johnson v. Beto, 466 F.2d 478, 480 (5th Cir. 1972) ("[P]lea bargaining must have more substantiality than mere expectation and hope. It must have explicit expression and reliance and is measured by objective, not subjective, standards. All of the elements of the plea bargain were found here, and the law gives its sanction to such bargains when they are real and not mere figments.")

To the extent petitioner also argues that his counsel was ineffective for *misinforming* him as to the government's position on running the sentences concurrently, the court also finds that petitioner's claim is without merit. The undersigned is persuaded by the reasoning in United States v. Bridges, 68 Fed. Appx. 896 (10th Cir. 2003) (unpublished). In Bridges, the petitioner alleged that his counsel misrepresented the substance of the government's plea agreement in that the petitioner believed that the government would recommend a sentence at the low end of the guidelines. However, the government argued that it only agreed not to oppose a low end sentence. Id. at 898-99. The court concluded that the true agreement was clarified by the government in open court and clearly stated that the government would not oppose any request by petitioner to be sentenced on low end - - not that the government would make such a recommendation. Accordingly, the court held that petitioner failed to show the performance of his counsel was deficient since the plea agreement was made clear in court. Id. The rationale is applicable in this case. The petitioner can not show prejudice when it was made clear in open court what the government would recommend.

Dickinson does not allege that his guilty plea was unknowing, unintelligent, or involuntary. The court's review of the record reflects that petitioner understood the significance of his waiver of collateral

15

relief. Jones v. U.S., 2005 WL 1863366 (M.D. Fla. August 4, 2005) (slip opinion) citing United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir.2001) ("To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver."), cert. denied, 536 U.S. 961, 122 S.Ct. 2666, 153 L.Ed.2d 840 (2002); United States v. Bushert, 997 F.2d 1343, 1352 (11th Cir.1993) ("[F]or a sentence appeal waiver to be knowing and voluntary, the district court must have engaged the defendant about the sentence appeal waiver during the Rule 11 hearing."), cert. denied, 513 U.S. 1051, 115 S.Ct. 652, 130 L.Ed.2d 556 (1994). See also Spinelli v. Collins, 992 F.2d 559, 561 (5th Cir.1993) (Unfulfilled subjective expectations of counsel and a defendant regarding the possible length of sentence do not render an otherwise valid plea involuntary.)

The district judge reviewed the terms of the plea agreement, including the waiver provision, with the petitioner and when questioned whether he understood petitioner responded in the affirmative. (Transcript, Vol. 1, pp. 1-11; Vol. 3, pp. 1-4) The undersigned finds that the plea and the waiver were knowing, intelligently, and voluntarily entered, and pursuant to the waiver provision in the plea agreement petitioner's claim for ineffective of counsel must be denied. See Bradshaw v. U.S., 2005 WL 1669036. *4 (M.D. Fla., July 12, 2005) (slip opinion) ("Petitioner cannot circumvent the terms of his plea agreement merely because he does not like the outcome at sentencing.") citing U.S. v. Bushert, 997 F.2d 1343, 1350 (11th Cir. 1993).

In the final analysis, the undersigned Magistrate Judge finds that no oral modification of the plea agreement existed and therefore, there was nothing outside the initial plea agreement for petitioner's

counsel to reduce to writing. Petitioner's argument of ineffective assistance of counsel fails to meet either prong of the Strickland test as set forth herein above. Accordingly, it is the recommendation of the undersigned that petitioner's §2255 petition be **DENIED.**

V.      Motion to Renounce United States Citizenship

Petitioner has also filed a document entitled "Notice of a Formal Written Oath of Renunciation of My United States Nationality and Request for a Certificate of Loss of United States Nationality of Diplomatic or Consular Officer fo the United States." (Doc. 67)      Petitioner's notice states, in sum, that he renounces his United States Citizenship pursuant to 8 U.S.C. § 1481(a)(6). [11]  8 U.S.C. §

---

[11] 8 U.S.C. § 1481 provides, in pertinent part:

(a) A person who is a national of the United States whether by birth or naturalization, shall lose his nationality by voluntarily performing any of the following acts with the intention of relinquishing United States nationality--

(1) obtaining naturalization in a foreign state upon his own application or upon an application filed by a duly authorized agent, after having attained the age of eighteen years; or

(2) taking an oath or making an affirmation or other formal declaration of allegiance to a foreign state or a political subdivision thereof, after having attained the age of eighteen years; or

(3) entering, or serving in, the armed forces of a foreign state if (A) such armed forces are engaged in hostilities against the United States, or (B) such persons serve as a commissioned or non-commissioned officer; or

(4)(A) accepting, serving in, or performing the duties of any office, post, or employment under the government of a foreign state or a political subdivision thereof, after attaining the age of eighteen years if he has or acquires the nationality of such foreign state; or (B) accepting, serving in, or performing the duties of any office, post, or employment under the government of a foreign state or a political subdivision thereof, after attaining the age of eighteen years for which office, post, or employment an oath, affirmation, or declaration of allegiance is required; or

1481 outlines various methods by which an individual may effectively renounce his United States citizenship. Petitioner states that his motion is made pursuant to 8 U.S.C. § 1481 (a)(6), which provides that an individual may make "in the United States a formal written renunciation of nationality in such form as may be prescribed by, and before such officer as may be designated by, the Attorney General, whenever the United States shall be in a state of war and the Attorney General shall approve such renunciation as not contrary to the interests of national defense...." [12]

In <u>Koos v. Holm</u>, 204 F.Supp. 2d 1099 (W.D. Tenn. 2002), a state prison inmate moved to renounce his citizenship under 8 U.S.C. §1481(a)(6). Koos alleged that the United States was in a "time of war" and requested that assigned designees be sent to the prison to allow him to execute the

---

> (5) making a formal renunciation of nationality before a diplomatic or consular officer of the United States in a foreign state, in such form as may be prescribed by the Secretary of State; or
>
> (6) making in the United States a formal written renunciation of nationality in such form as may be prescribed by, and before such officer as may be designated by, the Attorney General, whenever the United States shall be in a state of war and the Attorney General shall approve such renunciation as not contrary to the interests of national defense; or
>
> (7) committing any act of treason against, or attempting by force to overthrow, or bearing arms against, the United States, violating or conspiring to violate any of the provisions of section 2383 of Title 18, or willfully performing any act in violation of section 2385 of Title 18, or violating section 2384 of Title 18 by engaging in a conspiracy to overthrow, put down, or to destroy by force the Government of the United States, or to levy war against them, if and when he is convicted thereof by a court martial or by a court of competent jurisdiction.

8 U.S.C. § 1481(a).

[12] Petitioner previously filed a similar motion pursuant to 8 U.S.C. § 1481(a)(5) which Chief Judge Granade denied on April 11, 2005. (Doc. 65)

proper forms in order to renounce his citizenship. The court declined the request noting that "[c]ontrary to Koos' belief, the United States is not in a state of war and §1481(a)(6) is presently inoperative." <u>Id.</u> at The Court further opined:

> Koos may renounce his citizenship by following any other provision of §1481. ...'Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' <u>Hewitt,</u> 459 U.S. at 467, 103 S.Ct. 864; <u>Bell</u>, 441 U.S. at 546, 99 S.Ct. 1861; <u>Wolf</u>, 418 U.S. at 56. The courts have repeatedly held that association with other persons, regardless of the constitutional source of the protection of that activity, is necessarily restricted as an incidental and inevitable result of incarceration. <u>Pell v. Procunier</u>, 417 U.S. 817, 94 S.Ct. 2800, 41 L. Ed. 2d 495 (1974)(enunciating general principle that incarceration necessarily restricts an inmate's personal freedoms, particularly associational freedoms). After Koos fully serves his sentence, he is free to travel to another country and renounce his citizenship to a United States Consular Officer. As he is a prisoner at this time, he may not exercise this right. Accordingly, Koos' motion for an order allowing him to renounce his citizenship is DENIED.

204 F.Supp. 2d at 1108.

The court recognizes the right of individuals to renounce their citizenship. However, this right is tempered by the fact that petitioner is currently incarcerated and is in the custody of the United States. Accordingly, it is the recommendation of the undersigned that petitioner's motion to renounce his United States citizenship be DENIED.

The attached sheet contains important information regarding objections to this Recommendation.

**DONE** this the <u>6th</u> day of September 2005.

<u>/s/ Kristi K. DuBose</u>
**KRISTI K. DuBOSE**
**UNITED STATES MAGISTRATE JUDGE**

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3. **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                **KRISTI K. DuBOSE**
                **UNITED STATES MAGISTRATE JUDGE**